IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

STEPHANIE WEINSTEIN,    )
         )
    Plaintiff,  ) Civ. No.  06-6201-TC
         )
  vs.      )
         )
         ) OPINION AND ORDER
         )
CITY OF EUGENE and OFFICER )
CHRISTOPHER HARRISON,  )
         )
    Defendants. )
_____)

COFFIN, Magistrate Judge.

Before the court is defendants' motion for summary judgment (#17).  For the following reasons, the motion is granted.

<u>Factual Background</u>

Plaintiff co-owns a condominium at 1500 Norkenzie #3 with Steve Magyar, who was the sole occupant of the premises when plaintiff filed for bankruptcy.  In connection with the bankruptcy proceedings, plaintiff planned to occupy that property in order to qualify for the homestead exemption.  Thus, on June 28, 2004, plaintiff attempted to enter with the assistance of a locksmith when it appeared that Magyar was not home.  Magyar opened the door as the locksmith was unlocking it.  Plaintiff entered and refused to leave.  Police were dispatched to the residence.  Officer

1 Opinion and Order

Gilbert and Sgt. Flynn were presented with a number of legal documents, including the deed to 1500 Norkenzie #3 and judgment declaring joint ownership of Magyar and plaintiff, a Family Abuse Protection Act (FAPA) order prohibiting Magyar from contacting plaintiff, and a modified FAPA order that allowed plaintiff to stay with her parents next door (at 1500 Norkenzie #2) without causing a FAPA violation.

Sgt. Flynn discussed the documents on the phone with a district attorney and informed plaintiff that she was trespassing, and if she returned to the residence, she would be subject to arrest for trespassing. According to plaintiff, the conclusion, which apparently stemmed from the district attorney's analysis, was based on a misinterpretation of the FAPA modification. Plaintiff asserts that the FAPA modification was mistakenly interpreted as an order that Magyar would be the sole occupant of 1500 Norkenzie #3. See Ptf's Resp. to Def's Statement of Facts at 7-8. Sgt. Flynn instructed plaintiff that if she did not leave immediately, she could be arrested for trespass. As a result, plaintiff left.

Sgt. Flynn then made the following entry into the Computer Aided Dispatch (CAD) database:

> QA taken EGPKLF - Per DA's office, status quo remains in effect pending a subsequent court order. Though Weinstein and Magyar jointly own the property, court documents give Magyar sole occupancy. Weinstein has been trespassed. If she returns she can be arrested for trespass. Sgt. Flynn has copies of latest court document and can be contacted 24/7 as needed to resolve this issue. EGPKLF C.

Again, on August 19, 2004, at a time when plaintiff believed

that Magyar was not home, she attempted to occupy 1500 Norkenzie #3.   She again entered with the assistance of a locksmith and found Magyar at home.   A conflict ensued, and officers Harrison and Ou were called to the scene.   Magyar told Officer Harrison that he was the sole occupant and that plaintiff was trespassing. Officer Harrison was informed of Sgt. Flynn's CAD entry, which stated, "If [plaintiff] returns she can be arrested for trespass."

Officer Harrison instructed plaintiff to leave.   She refused, citing her understanding of her ownership rights in the condominium, and was arrested for trespass.

Plaintiff now brings this action against Officer Harrison and the City of Eugene.   She asserts two claims against the City: municipal liability under <u>Monell v. Dept. of Social Services</u>, 436 U.S. 658 (1978), via 42 U.S.C. § 1983, and negligence.   Against Officer Harrison only, plaintiff alleges a section 1983 claim for violation of her Fourth Amendment rights.

Defendants move for summary judgment on all claims.   Both defendants contend that plaintiff fails to state any claim upon which relief can be granted and that the arrest is supported by probable cause.   Officer Harrison asserts that he is entitled to qualified immunity.   The City contends that the negligence claim is barred by the statute of limitations and fails on the merits. As I explain below, summary judgment on all claims is appropriate.

## Standard

Summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the moving party is

3 Opinion and Order

entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). On a motion for summary judgment, all reasonable doubt as to the existence of a genuine issue of fact is resolved against the moving party, <u>Hector v. Wiens</u>, 533 F.2d 429, 432 (9th Cir. 1976), and any inferences drawn from the underlying facts are viewed in the light most favorable to the nonmoving party. <u>Valadingham v. Bojorquez</u>, 866 F.2d 1135, 1137 (9th Cir. 1989).

The initial burden is on the moving party to point out the absence of any genuine issue of material fact. Once the initial burden is satisfied, the burden shifts to the opponent to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).

Rule 56(c) mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof. <u>Id.</u> at 323-24.

Analysis

I.   Fourth Amendment[1] 42 U.S.C. § 1983 Claim against Officer Harrison

Whether plaintiff's right to be free from unreasonable search and seizure under the Fourth Amendment was violated hinges on the validity of her arrest.   The validity of the arrest, in turn, depends on whether, at the time of the arrest, the facts and circumstances known to the arresting officer and about which the officer had reasonably trustworthy information were sufficient to lead a reasonable person to believe that the suspect was committing an offense.  Beck v. Ohio, 379 U.S. 89, 91 (1964). In order to prevail, defendant must demonstrate that the record, taken in the light most favorable to plaintiff, does not produce a genuine issue of material fact on whether the arrest was valid.

The record leaves no doubt that the arrest was valid. Officer Harrison was summoned to a residence in which Maygar was the sole occupant.  He learned that plaintiff had entered without permission and with the assistance of a locksmith.   Plaintiff reported that she co-owned the residence but presented no documentation that she was entitle to reside there.

Officer Harrison further learned that plaintiff had entered the residence with the aid of a locksmith while Magyar was home approximately six weeks before.   He was told by Eugene Police Department dispatch that, according to Sgt. Flynn's CAD entry, the investigating officer had been advised, "per D.A.'s office," that Magyar was to remain the sole occupant of the residence while the

---

[1]Although plaintiff cites Substantive Due Process in the caption for this claim, defendants are correct in explaining that plaintiff's claim is properly brought under the Fourth Amendment guarantee against unreasonable search and seizure.

disputed occupancy matters were being resolved.  The CAD entry also recorded that Sgt. Flynn warned plaintiff that she would be subject to arrest for trespass if she returned to the residence. At some point after the arrest, it became clear that the reported advice of the district attorney with whom Sgt. Flynn spoke in June was erroneous.  Although Sgt. Flynn was apparently told that Magyar was to remain the sole occupant of the residence pending further proceedings, that conclusion was mistaken.  Officer Harrison was not aware of the district attorney's mistake. Rather, the information that he received indicated that plaintiff was not entitled to occupy the residence, and she had been warned that her entry would subject her to arrest for trespass.

The court evaluates the reasonableness of the officer's actions based on information known to the officer from trustworthy sources at the time of the arrest.  Beier v. City of Lewiston, 354 F.3d 1058, 1064 (9th Cir. 2004).  The record indicates that Officer Harrison's belief that plaintiff was committing the crime of trespass was based on reasonably trustworthy information, and his decision to arrest her was reasonable.  Case law clearly holds that an officer may reasonably rely on information from police dispatch in determining whether a suspect is engaging in criminal activity, even where such information is later discovered to have been erroneous.  See, e.g., Rohde v. City of Roseburg, 137 F.3d 1142, 1143 (9th Cir.), cert. denied,  525 U.S. 817 (1998) (report of dispatcher that arrestee's car was stolen, though erroneous, provided reasonably trustworthy information on which officer made valid arrest).  Moreover, in analogous cases across the circuits, courts have held that officers' decisions to arrest individuals on

invalid warrants, over the arrestees' protest that the warrants had been recalled, are reasonable under the circumstances. E.g., Duckett, v. City of Cedar Park, Texas, 950 F.2d 272, 280 (5th Cir. 1992); Mitchell v. Aluisi, 872 F.2d 577 (9th Cir. 1989); Lauer v. Dahlberg, 717 F. Supp. 612 (N.D. Ill. 1989), aff'd, 907 F.2d 152 (7th Cir. 1990).

In this case, the mistake of fact was found in a CAD entry, from a database that could reasonably have been expected to have provided trustworthy information. That entry created the reasonable belief that plaintiff was engaging in repeated criminal activity. The CAD entry, along with Officer Harrison's observation that plaintiff tried to access the condominium with a locksmith over Magyar's protestations, provided probable cause that plaintiff was trespassing.

I add that plaintiff's own actions at the time of the arrest were unfortunate and unreasonable. Her decision to re-enter the residence a second time with the help of a locksmith, and her refusal to comply with the officers' instructions to leave, when it would have been possible to arrange for access to the residence and resolve the occupancy dispute from an uncontested location, does not assist her position. Officer Harrison was confronted with a situation wherein the occupant of the premises (Magyar) had physically resisted the intrusion of plaintiff into the residence. One or the other had to depart the premises pending a civil resolution of their dispute. Magyar was in possession, while plaintiff was picking the lock. The CAD entry supported Magyar. Harrison had no basis to evict Magyar. He gave plaintiff a reasonable option (leave and resolve the matter in court). She

7 Opinion and Order

refused and, in essence, elected to be arrested.  Under those circumstances, Officer Harrison's actions were eminently reasonable, which is the essence of the Fourth Amendment.

Plaintiff argues that the arrest resulted from a mistake of law, not a mistake of fact, and for that reason, the court should not conclude that probable cause supported Officer Harrison's decision to arrest her.  Plaintiff's arguments are unavailing. Plaintiff relies first on <u>Alford v. Haner</u>, 333 F.3d 972 (9th Cir. 2003), <u>rev'd on other grounds</u>, 543 U.S. 146 (2004), in which the plaintiff, who had been stopped by an officer, tape recorded the interactions at the stop.  The officer arrested him for making the tape.  However, there was no law against making the tape; thus, the arrest was based on the officer's misunderstanding about a category of activity that was, in fact, lawful.  The court held that the mistake of law could not justify the arrest.

Plaintiff also relies on <u>Frunz v. City of Tacoma</u>, 468 F.3d 1141 (9th Cir. 2006), and <u>Beier v. City of Lewiston</u>, 354 F.3d 1058 (9th Cir. 2004), both cases in which the plaintiffs prevailed in actions involving arrests based on misunderstandings of court orders.  In <u>Frunz</u>, a recently divorced wife entered the marital home, which a court had just awarded to her.  A neighbor called the police and erroneously reported that there was a restraining order against the wife, and that her presence in the home violated the order.  The police entered, relying on the restraining order, and held the woman and her guests before releasing them.  The court held that the actions of the police were unreasonable because they failed to read the order before relying on it. Similarly, in <u>Beier</u>, the court held that a false arrest based on

8 Opinion and Order

the officers' failure to understand the content of a protective order was unreasonable and could not support a determination of qualified immunity.

Plaintiff argues that this case is similar to <u>Alford</u>, <u>Beier</u>, and <u>Frunz</u> because Officer Harrison relied in part on the erroneous CAD entry to discern whether plaintiff was trespassing. This case is distinguishable however, in very important respects. Unlike <u>Alford</u>, the arrest was not made solely on a legal determination. Officer Harrison did not make a mistaken <u>legal</u> determination, based on property law, that plaintiff had no ownership interest in the condominium. Officer Harrison acted not on a misunderstanding on whether a particular legal right existed, but on the CAD entry, which provided an investigative conclusion (based on mixed questions of facts and law) specific to a past encounter with plaintiff. The district attorney's apparent misunderstanding of plaintiff's right to occupy the residence was a mistake that preceded even Sgt. Flynn's entry of the CAD record. The record, in turn, was one of a number of factors that Officer Harrison drew upon to determine that a crime was occurring. Thus, unlike <u>Alford</u>, any mistake involved in plaintiff's arrest did not stem from a legal determination by the arresting officer. Rather, the arrest was based on observed facts that support a determination of probable cause.

Nor do <u>Frunz</u> or <u>Beier</u> assist plaintiff. In both cases, the arresting officers' actions were deemed unreasonable because they failed to read restraining orders that served as the bases for the seizures. Here, in contrast, no court order was involved. The CAD entry referenced "court papers," but the entry itself was not

9 Opinion and Order

a rule or order that Harrison was required to construe in order to determine whether plaintiff's actions were legal.   The entry did not state that subsequent investigating officers must consult the papers in order to determine whether plaintiff was trespassing; instead, it stated that plaintiff was informed that if she returned she would trespass.   It was reasonable for Officer Harrison to assume that the <u>author</u> of the CAD report reasonably relied on a district attorney's evaluation the rights of plaintiff and determined that she was not entitled to occupy the residence. Taken with the facts gathered at the scene, Officer Harrison had probable cause for the arrest.

In sum, <u>Alford</u>, <u>Beier</u>, and <u>Frunz</u> are distinguishable because in those cases, the arresting officers based their decisions on misguided legal conclusions.   In contrast, Officer Harrison's determination was fact-based.   Furthermore, observed facts and information available from trustworthy sources provided probable cause for plaintiff's arrest.   Summary judgment in favor of Officer Harrison is appropriate.[2]

## II.  Monell § 1983 Claim against the City of Eugene

Plaintiff further asserts that the City of Eugene is liable under <u>Monell v. Dept. of Social Services</u>, 436 U.S. 658 (1978), and <u>Adickes v. S. H. Kress & Co.</u>, 398 U.S. 144 (1970), "for its unconstitutional policies, customs, or practices" that result from failing to adequately train its officers to avoid plaintiff's false arrest.

---

[2]Because the arrest was valid, I need not consider defendant's qualified immunity argument.

Under Monell and its progeny, a local government entity may be held liable for its failure to preserve a constitutional rights where a plaintiff can demonstrate (1) deprivation of a constitutional right (2) due to the policy of a municipality (3) which exhibits "deliberate indifference to the plaintiff's constitutional right and (4) which is the moving force behind the constitutional violation. Oviatt v. Pearce, 954 F.2d 1470, 1477 (9th Cir. 1992).

Plaintiff does not point to any identifiable policy that is the "moving force" behind plaintiff's mistaken arrest. Rather, plaintiff would like the court to determine that the city failed to educate its officers on ownership rights of tenants in common, and such an oversight exhibits "deliberate indifference" to an individual's right to be free from seizure in a house that one owns. However, in the Ninth Circuit, plaintiff is required to show the "deliberateness" of the City's indifference by proving the City knew or should have known that the lack of ownership-rights education for officers would potentially result in violation of a homeowner's constitutional rights. See Chew v. Gates, 27 F.3d 1432, 1445 (9th Cir. 1994), cert. denied, 513 U.S. 1148 (1995) (city's practice of equipping officers with dogs, with knowledge that 40 percent of encounters result in bites, failure to create policy that limits use of dogs in making arrest establishes "deliberate indifference"). Plaintiff points to no such evidence in the record.

In this case, the officers acted on a number of routine practices and protocols, including calling a district attorney to determine plaintiff's right to occupy 1500 Norkenzie #3, placing

11 Opinion and Order

a notice in CAD, and retrieving the notice when confronted again with plaintiff's attempt to occupy the residence.   The fact that Sgt. Flynn's entry included a later-discovered mistake does not bespeak a policy that leads to infringement of rights or deliberate indifference; rather it reflects the injection of human error into the existing noncontroversial policies that govern police investigation under such circumstances.

Plaintiff argues that Pembaur v. City of Cincinnati, 475 U.S. 469 (1986), permits liability to attach notwithstanding the absence of an identifiable policy.   In Pembaur, the deputy sheriffs, vested with authority from Sheriff and the County Prosecutor, forcibly entered the office of a physician accused of welfare fraud in order to find two subpoenaed witnesses who had failed to appear before a grand jury.   The physician was acquitted of welfare fraud and brought a section 1983 Monell action against the city for violating his Fourth Amendment rights.   The Court held that Pembaur stated a claim against the deputies and Sheriff under Monell even though no "policy" was cited.   The Court explained that municipal liability may be imposed for a single decision by municipal policymakers where the offending course of action is directed by those who establish governmental policy. The Court cautioned that municipal liability under section 1983 only where a deliberate choice to follow a course of action is made from among various alternatives by an official charged with establishing final policy.

Pembaur does not assist plaintiff.   On the record before the court, it is clear that Officer Harrison was not directed by those who establish governmental policy, nor was Harrison vested with

12 Opinion and Order

policymaking responsibilities himself. He did not act pursuant to orders from any superior policymaker on the day of the arrest. Rather, he was implementing policies. <u>Pembaur</u> cannot permit plaintiff to state a claim in this case.

In sum, this is not the type of case for which <u>Monell</u> was designed, and, as a matter of law, summary judgment in favor of the City is warranted.

### III. Negligence Claim against the City of Eugene

Plaintiff argues that the City is liable, both vicariously and directly, for Officer Harrison's breach of duty "to exercise reasonable care in the performance of his official duties" and for "negligently training, supervising, or disciplining" its employees. The City contends that this claim fails for noncompliance with the applicable statute of limitations and on the merits.

The City's arguments are well-taken. Whether or not plaintiff's claim is timely, it fails on the merits. As explained above, Officer Harrison had probable cause to arrest plaintiff, and therefor, he did not fall short of the care required in the performance of his official duties. Moreover, plaintiff has not made a prima facie case that the City negligently trained, supervised, or disciplined Officer Harrison. Summary judgment on this claim is appropriate.

//

//

//

//

13 Opinion and Order

### Conclusion

Defendants' motion for summary judgment (#17) is granted.

IT IS SO ORDERED.

Dated this ___/___ day of August, 2007.

_____
THOMAS M. COFFIN
United States Magistrate Judge

14 Opinion and Order